**DAVIS WRIGHT TREMAINE LLP**
Geoffrey S. Brounell
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel:  (212) 489-8230
geoffreybrounell@dwt.com

*Attorneys for The GEO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY, | |
| Plaintiff, | Case No. 2:25-cv-12007 |
| - against - | **NOTICE OF REMOVAL** |
| THE GEO GROUP, INC., | |
| Defendant. | |

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446, Defendant The GEO Group, Inc. ("GEO" or "Defendant") hereby removes the above-captioned action from Newark Municipal Court, Complaint Number S 2025 5303 ("State Court Case"), to the United States District Court for the District of New Jersey.  GEO respectfully requests that the above-captioned cased be consolidated with *City of Newark v. GEO Re-Entry Group, LLC, et al.*, Case No. 2:25-cv-02225-JKS-LDW ("Related Federal Case") because the two cases share a complete overlap in subject matter, as discussed in more detail below.  The action is removable pursuant to 28 U.S.C. §§ 1331 and 1442(a)(1) in that it is an action in which the alleged right to

1

relief necessarily depends on the resolution of a substantial question of federal law.

GEO respectfully submits the following grounds for removal:

## I.    LOCAL CIVIL RULE 10.1(a) INFORMATION

1.    Pursuant to Rule 10.1(a) of the Local Civil Rules, the addresses of the named parties are as follows:

2.    Upon information and belief, the State of New Jersey is represented by the Essex County Prosecutor's Office, 50 W Market St #3, Newark, NJ 07102.

3.    Defendant GEO's principal place of business is located at 4955 Technology Way, Boca Raton, Florida 33431.  GEO is represented by Geoffrey Brounell, Davis Wright Tremaine LLP, 1251 Avenue of the Americas, 21st Floor, New York, NY 10020.

## II.    INTRODUCTION

4.    GEO, by and through its undersigned attorneys, hereby removes this action from Newark Municipal Court, Complaint Number S 2025 5303, to the United States District Court for the District of New Jersey.  Plaintiff, the State of New Jersey ("Plaintiff" or the "State"), filed a complaint which appears to charge GEO with noncompliance of New Jersey Administrative Code ("N.J.A.C.") 5:23-2.31(b) with relation to the federal immigration facility located at 451 Doremus Avenue in Newark, New Jersey (the "Delaney Hall Facility" or "Facility").

2

5.      N.J.A.C. 5:23-2.31(b) is a civil statute which imposes civil penalties for violations of the administrative code relating to construction permits.  *See* N.J.A.C. 5:23-2.31(b)(2)-(3).

6.      GEO owns the Delaney Hall Facility, which is located at 451 Doremus Avenue in Newark, New Jersey, and has a permitted use capacity of approximately 1,196 beds.  At various times since its opening in 2000, the Delaney Hall Facility has held federal, state, and county detainees.  From 2011 through 2017, U.S. Immigration and Customs Enforcement ("ICE") previously contracted to house up to 450 immigration detainees at the Delaney Hall Facility, including detainees from Texas, Louisiana, and other locations throughout the United States.

7.      Removal is accordingly proper pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446.  In support of this Notice of Removal, Defendant states the following:

III.   **NATURE OF THE CLAIMS**

8.      The State initiated a claim in the Newark Municipal Court by filing a complaint against GEO.  A copy of the Newark Municipal Court case search and all other pleadings, processes, and orders served upon GEO and available on the state court docket are attached as **Exhibit A**.

9.      The State's complaint appears to charge GEO with noncompliance of N.J.A.C. 5:23-2.31(b).  This statute, which was adopted by the state of New Jersey

pursuant to authority from the State Uniform Construction Code Act, is included in

a set of N.J.A.C. regulations, the express intent of which is to

> insure public safety, health and welfare insofar as they are affected by building construction, through structural strength, adequate egress facilities, sanitary equipment, light and ventilation, and fire safety; and, in general, to secure safety to life and property from all hazards incident to the design, erection, repair, removal, demolition or use and occupancy of buildings, structures or premises.

N.J.A.C. 5:23-2.1.

10.    The penalty for noncompliance under N.J.A.C. 5:23-2.31(b) is a civil

penalty tied to each violation of the conditions of a construction permit.  *See* N.J.A.C.

5:23-2.31(b)(2)-(3).

11.    The Delaney Hall Facility is a secure federal immigration detention

facility.  GEO has been contracted to provide secure residential care support at the

facility pursuant to a federal contract with ICE.

12.    Consistent with the requirements of GEO's contract for secure

residential services at the Delaney Hall Facility, ICE exercises exclusive control over

all access to secure portions of the facility.

13.    It is undisputed that all requests for access to secure portions of the

Delaney Hall Facility must obtain pre-clearance approvals by ICE, including all

requests for access by federal and state employees, as well as GEO employees.  *See,*

*e.g.*, Related Federal Case, ECF No. 15-9 (email chain between Newark's counsel

and ICE representative wherein ICE representative confirms in writing that ICE has

oversight over the Delaney Hall Facility); *id*., ECF No. 2 ¶¶ 4, 10 (declaration from GEO employee and Facility Administrator of Delaney Hall Facility affirming same or similar).  GEO is without authority to grant access to the secure portions of the Delaney Hall Facility absent ICE clearance and approval.

14.    By seeking to hold GEO liable for various State, local, and city codes relating to the administration of the Delaney Hall Facility, the State is therefore seeking to regulate ICE, and GEO by extension as ICE's private contractor, in violation of multiple preemption and sovereign immunity doctrines.

15.    On March 31, 2025—the offense date referenced in the complaint, Mayor Ras Baraka of Newark and other Newark government representatives requested entry to the Delaney Hall Facility to conduct inspections.  Related Federal Case, ECF No. 2 ¶¶ 5-6.  GEO explained to the Newark representative that entry to the Delaney Hall Facility requires permission from ICE.  *See id*. ¶ 10.

16.    Since March 31, 2025, ICE has granted Newark's representatives access to the Delaney Hall Facility on at least three dates—April 11, April 25, and June 16, 2025, and on these dates, Newark has conducted multiple inspections.

17.    Under 28 U.S.C. § 1446, the Notice of Removal is timely.  The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable.  28 U.S.C. § 1446(b).  On June 4,

2025, GEO received a copy of a document from the Newark Municipal Court, dated May 26, 2025, titled "Virtual Hearing Change in Court Date," via regular mail.  State Court Case Trans. No. MCS20253904190.  This document purported to schedule a virtual court hearing in Newark Municipal Court on June 27, 2025.

18.    To date, GEO has <u>not</u> been served with a copy of the complaint in this action.  Further, the clerk of the Newark Municipal Court refused to provide undersigned counsel's law firm with a copy of the Complaint, even though the complaint should be a publicly-available document as a matter of law.

19.    GEO now removes this action and attaches a copy of the publicly available complaint information on Newark Municipal Court Case Search, as well as all documents served on GEO to date in compliance with 28 U.S.C. § 1446(a).

20.    The document titled "Virtual Hearing Change in Court Date" placed GEO on notice of the existence of the complaint on June 4, 2025.  On this date, GEO was on notice for the first time that the State's claims in this action involve ICE's denial of the State's request for access to the Delaney Hall Facility.  The removal of the action, which is being filed within 30 days of GEO's notice of the complaint, is therefore timely under 28 U.S.C. § 1446(b).

## IV.    <u>PRIOR CLAIMS IN PENDING DISTRICT OF NEW JERSEY CASE</u>

21.    On March 31, 2025, in the Superior Court of New Jersey, Essex County, ESX-L-002510-25, the City of Newark filed a complaint against GEO.  This

complaint concerns various alleged violations of the New Jersey Administrative Code relating to the Delaney Hall Facility.

22.    Specifically, this complaint asserts four causes of action: two counts titled "Failure to Permit Entry for Inspection," and two counts titled "Violation of City Code."

23.    On April 1, 2025, GEO removed this state court case to federal court where it is currently pending.  The case is styled as *City of Newark v. GEO Re-Entry Group, LLC, et al.*, Case No. 2:25-cv-02225-JKS-LDW.

24.    In the Related Federal Case, there are two pending motions.  On April 9, 2025, GEO filed a Motion to Join A Necessary Party and Dismiss or, in the alternative, Order a More Definite Statement.  Related Federal Case, ECF No. 9.  On April 11, 2025, the City of Newark filed a Motion for Order to Show Cause, seeking preliminary injunctive relief.  *Id.*, ECF No. 15.

25.    During two status conferences held before this court on April 4, 2025, both Newark's counsel and the court advised undersigned counsel for GEO that neither Newark nor the Court intended to challenge GEO's asserted bases for federal jurisdiction.

26.    Accordingly, there is no dispute that jurisdiction is proper in the Related Federal Case.

## V.     JURISDICTION AND INTRADISTRICT ASSIGNMENT

27.     Subject matter jurisdiction is based on 28 U.S.C. §§ 1331, 1441, 1442, and 1446, as set forth below under Section VI.

28.     Venue is proper in the United States District Court for New Jersey as the state court action, which is the subject of this removal petition, was filed in Newark Municipal Court where it is now pending.

## VI.    GROUNDS FOR REMOVAL – FEDERAL QUESTION

29.     This is a civil action over which this Court also has original jurisdiction under 28 U.S.C. § 1331 and is removable to this Court by GEO pursuant to the provisions of 28 U.S.C. § 1442(a)(1) in that it is a civil action in which the State's alleged right to relief necessarily depends on the resolution of a substantial question of federal law.  "Federal officers, and their agents, may remove cases based on acts performed under the color of their federal office if they assert a colorable defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006); *see also Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-1181 (7th Cir. 2012).

30.     28 U.S.C. § 1442(a)(1) "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction."  *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 869 (E.D. Mo. 2016). The words "or relating to" were added to the statute by Congress in 2011.  This

addition was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court." *Id.* (internal quotes omitted).

31.    The Supreme Court has mandated a generous interpretation of the federal officer removal statute in favor of removal. *Ruppel*, 701 F.3d at 1180 (the federal officer removal status is not narrow or limited); *Willingham v. Morgan*, 395 U.S. 402, 406-407 (1969); *see also Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999) (noting that the Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal officer removal] statute.") (quoting *Willingham*, 395 U.S. at 407).

32.    At all relevant times, GEO was a "person(s)" within the meaning of 28 U.S.C. § 1442(a)(1). *Ruppel*, 701 F.3d at 1181 (finding that a corporate defendant was a "person"); *see also Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D. Cal. 1992).

33.    The State's claim against GEO is based solely on GEO's performance of its federal contract with ICE to provide secure residential services at the Delaney Hall Facility.  While acting as ICE's private contractor related to the operation of the Delaney Hall Facility, GEO acts under the direction of an officer of the United States as within the meaning of 28 U.S.C. § 1442(a)(1).  Because the decision on whether to grant access to the Delany Hall Facility is exclusively ICE's decision, GEO has colorable federal defenses to the State's claims.

34.    Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (a) demonstrate that it acted under the direction of a federal officer, (b) raise a colorable federal defense to plaintiff's claims, and (c) demonstrate a causal nexus between plaintiff's claims and the acts it performed under color of federal office.  *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Ruppel*, 701 F.3d at 1180-1181.

35.    "Requiring a private contractor seeking federal officer removal to show a 'colorable' claim of state law preemption violates the fundamental principle that '[t]he officer need not win his case before he can have it removed.'"  *Graves v. 3M Co.*, 17 F.4th 764, 773 (8th Cir. 2021) (quoting *Willingham*, 395 U.S. at 407).

36.    "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated.  Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010).

> It is the sufficiency of the facts stated — not the weight of the proof presented — that matters.  For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.  Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

*Id.* at 782-83.

37.    Should the State file a motion to remand this case, GEO respectfully requests an opportunity to respond more fully in writing.  To the extent the Court deems it necessary, GEO is willing to supplement the record with facts already set forth in the Related Federal Action, including facts related to requests for access to the Delaney Hall Facility.  *See* Related Federal Case, ECF No. 2 ¶ 10.

38.    GEO raises colorable federal defenses to this action under the doctrine of derivative sovereign immunity, under the intergovernmental immunity doctrine, and under principles of federal preemption.

### A.    Derivative Sovereign Immunity

39.    "The United States may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  It is therefore immune from suit unless a plaintiff can point to a statute that says otherwise.  *Cf. Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 167 (2016) (finding vicarious liability for federal contractor because the Telephone Consumer Protection Act established an exception to the broad derivative immunity enjoyed by contractors acting under the direction of the government); *Mitchell*, 463 U.S. at 212 ("[T]he existence of consent is a prerequisite for jurisdiction.").  Similarly, government contractors may not be sued for carrying out the sovereign's will.  *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20 (1940); *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341–43 (4th Cir. 2014) (private

employees receive *Yearsley* immunity, also known as derivative sovereign immunity, when performing same functions as government employees); *see generally Filarsky v. Delia*, 566 U.S. 377, 387 (2012) ("[I]t should come as no surprise that the common law did not draw a distinction between public servants and private individuals engaged in public service in according protection to those carrying out government responsibilities."). That is because the government has an "unquestioned need to delegate [its] functions," and because "[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).

40.     Thus, "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (4th Cir. 2018) (quoting *In re KBR*, 744 F.3d at 342); *Yearsley*, 309 U.S. at 20-21. In *Campbell-Ewald Co. v. Gomez*, the U.S. Supreme Court affirmed the two prong *Yearsley* standard and explained the standard as follows: "[w]here the Government's 'authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress,' we explained, 'there is no liability on the part of the contractor' who simply performed as the Government directed." 577 U.S. at 167 (quoting *Yearsley*, 309 U.S. at 20-21).

41.    As a result, GEO is immune from any suit for carrying out the sovereign's will, including but not limited to explaining that the State requires ICE's permission to access the Facility.

**B.    Intergovernmental Immunity—Direct Regulation**

42.    The Supremacy Clause provides that the "Laws of the United States" made in pursuance of the Constitution "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.  More than 200 years ago, in the foundational case of *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), the Supreme Court recognized that this guarantee of federal supremacy would be meaningless if the federal government were not immune from regulation and taxation by the states.  The Supreme Court held that the supremacy of the federal government within its legitimate sphere of action necessarily meant that the states had no power to interfere with a constitutionally valid federal activity.  *Id.* at 427-30.  In line with *McCulloch*'s prohibition on state laws that "retard, impede, burden, or in any manner control, the operations" of the federal government, 17 U.S. (4 Wheat.) at 436, a state law directly regulates the federal government—and is therefore unconstitutional—if it "involve[s] a direct, physical interference with federal activities ... or some direct, immediate burden on the performance of the [federal] functions." *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 96 (1945).  In assessing whether a state law substantially burdens federal operations, there is no distinction between state regulation of federal

employees and state regulation of private contractors carrying out federal operations.

In *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824) (Marshall, C.J.), the Supreme Court declared that "the right of the State to control [a federal contractor's] operations, if those operations be necessary to its character, as a machine employed by the government, cannot be maintained." *Id.* at 867.

43.    The Supreme Court has consistently relied on the Supremacy Clause to strike down state laws that dictate how the federal government carries out its federal functions.  In *Johnson v. Maryland*, Maryland sought to require a federal postal employee to comply with a state licensing regime before he could perform his federal duties.  254 U.S. 51, 55 (1920).  In holding the state law unconstitutional, the Court observed:

> [T]he immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on.

*Id.* at 57.

44.    In *Leslie Miller, Inc. v. Arkansas*, the Supreme Court struck down an Arkansas law that prevented a contractor selected by the federal government from bidding, contracting, and commencing work on a military base "without having obtained a license under Arkansas law for such activity...." 352 U.S. 187, 188 (1956) (per curiam).  The Court, in rejecting the state law, reasoned that "[s]ubjecting a

federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review" over the federal government's determination of who was qualified to perform federal work. *Id.* at 190.

45.    Following this precedent, courts have held that intergovernmental immunity forbids a state from substantially interfering with federal activity carried out by a private contractor, even where the activity occurs on private land. *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014). The State's attempt to enter the Delaney Hall Facility and inspect, investigate, and enforce local, State, and administrative requirements at the Delaney Hall Facility is unconstitutional because it attempts to directly regulate, control, and interfere with federal activities in violation of the Intergovernmental Immunity Doctrine. *See generally CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467 (2023), *appeal argued*, (3rd Cir. May 1, 2025).

## C.    Intergovernmental Immunity—Impermissible Discrimination

46.    The United States Supreme Court recently confirmed that the doctrine of Intergovernmental Immunity prohibits state laws that either "regulat[e] the United States directly or discriminat[e] against the Federal Government or those with whom it deals." *United States v. Washington* ("*Washington I*"), 596 U.S. 832, 838-39 (2022) (alterations in original) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). A state law impermissibly discriminates against the federal government or its contractors if it "single[s them] out" for less favorable

15

"treatment," *Washington v. United States* ("*Washington II*"), 460 U.S. 536, 546 (1983), or if it regulates them unfavorably on some basis related to their governmental "status," *North Dakota*, 495 U.S. at 438 (plurality opinion). Preventing discrimination against the federal government or those with whom it deals lies at the heart of the Constitution's intergovernmental immunity doctrine. *Washington I*, 596 U.S. at 840.

47.     The State's current attempts to block federal immigration operations at the Delaney Hall Facility represent a stark and unmistakable attempt to thwart federal operations through the less favorable treatment of ICE and its contractor GEO under local, State, and administrative requirements.  This type of blatant discrimination is plainly unconstitutional.  *United States v. California*, 921 F.3d 865, 883-84 (9th Cir. 2019) *see also GEO Group, Inc. v. Newsom*, 50 F.4th 745, 760 (9th Cir. 2022) ("[e]nforcement of the substance of [the regulation] against the contractors would have the same effect as direct enforcement against the Government.") (internal quotes omitted) (alternation in the original).  The State's attempt to enter the Delaney Hall Facility ostensibly to investigate compliance with local, State, and administrative codes is unconstitutional and invalid because it impermissibly discriminates against the federal government and its contractors. *Washington I*, 596 U.S. at 835-36.

### D.    Federal Preemption—Field

48.    Federal immigration law provides that the Secretary of Homeland Security:

> shall arrange for appropriate places of detention for aliens detained
> pending removal or a decision on removal[, and w]hen United States
> Government facilities are unavailable or facilities adapted or suitably
> located for detention are unavailable for rental, the [Secretary] may
> expend . . . amounts necessary to acquire land and to acquire, build,
> remodel, repair, and operate facilities . . . necessary for detention.

8 U.S.C. § 1231(g)(1).  To effectively arrange for appropriate places of detention for

removal of aliens, Congress further granted the Secretary authority "to make

contracts . . . as may be necessary and proper to carry out [his] responsibilities," 6

U.S.C. § 112(b)(2), including contracts with private parties.  Congress further

authorized the Secretary, in his "reasonable discretion," to carry out the immigration

enforcement activities of the Department of Homeland Security "through any

means," including "through contracts, grants, or cooperative agreements with non-

Federal parties."  28 U.S.C. § 530C(a)(4).  Congress also granted authority to

"carr[y] out," "in the reasonable discretion of the Attorney General," the activities

of ICE "through any means, including . . . through contracts, grants, or cooperative

agreements with non-Federal parties[,]" except to the extent that such agreements

are otherwise precluded by federal law.  *Id*.  In 2000, Congress enacted a statute

stating: "[n]otwithstanding any other provision of this section, the Attorney General

hereafter may enter into contracts and other agreements, of any reasonable duration,

for detention or incarceration space or facilities, including related services, on any

reasonable basis." H.R. 4942, 106th Cong. § 119 (2000) (18 U.S.C. § 4013, note). 18 U.S.C. § 4013 also specifically denotes the contemplated contracts authorized by Congress under this section is to include "Contracts for Space *or Facilities*." (emphasis added).

49.    Federal statutory directives and a comprehensive set of federal detention standards known as the Performance Based National Detention Standards ("PBNDS") govern the operation of private detention facilities. The current PBNDS were implemented and incorporated into ICE contracts at the direction of Congress. The Joint Explanatory Statement and House Report 114-668, which accompany the Fiscal Year (FY) 2017 Department of Homeland Security (DHS) Appropriations Act (Pub. L. 115-31), evince this direction. The Joint Explanatory Statement says: "[w]ithin 45 days after the enactment of this Act, ICE shall report on its progress in implementing the 2011 Performance Based National Detention Standards, including the 2016 revisions." 163 Cong. Rec. H3812 (2017). House Report 114-668 states: "Within 45 days after the date of enactment of this Act, ICE shall report on its progress in implementing the 2011 [PBNDS] and requirements related to [PREA], including a list of facilities that are not yet in compliance; a schedule for bringing facilities into compliance; and current year and estimated future year costs associated with compliance." H.R. Rep. No. 114-668, at 35.

50.    For Delaney Hall, while the PBNDS were included in the solicitation released by ICE at the start of the contracting process, the National Detention Standards ("NDS") are what now control.  The NDS, originally issued by ICE's precursor agency Immigration and Naturalization Service ("INS"), also serve to establish conditions of confinement and expectations for detention.  The NDS streamlines many of the requirements set forth in the PBNDS.

51.    That the PBNDS and the NDS provide for general compliance with applicable federal, state and local laws regarding safety and sanitation, fire safety, and fire prevention—or that ICE generally reaffirmed those requirements, to the extent applicable—does not mean that the State enjoys broad and unrestrained discretion to inspect those facilities.  There is significantly no requirement in the PBNDS or NDS that the State, Newark, or the municipality conduct such inspections.  Rather, those external inspections are routinely conducted not by municipalities, but by authorized and qualified third parties.  *See* Related Federal Case, ECF No. 18-1 ¶¶ 4-5.  And that is precisely what GEO has done: a third-party inspection was conducted as recently as June 16, 2025.

52.    On this point, *Leslie Miller v. Arkansas* and *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991) are instructive.  In *Leslie Miller*, a contractor was prosecuted and fined by the state for working as a contractor without having obtained an Arkansas contractor's license.  The fine was upheld by the Arkansas

state courts.  On appeal, the United States Supreme Court reversed.  The Supreme Court found that the Arkansas statute requiring licensing of the contractor interfered with the federal government's power to select contractors and to schedule construction and, therefore, was in conflict with the federal law regulating procurement.  352 U.S. at 188.  The Supreme Court went on to find the Arkansas state law requirements regarding contractor licensure were preempted because "similar grounds for licensing under the state statute and for finding 'responsibility'" are enumerated under the federal statute.  *Id.* at 189-90.  The Supreme Court further reasoned that application of such contractor licensing requirements to the federal government's preferred contractor would also "frustrate the expressed federal policy of selecting the lowest responsible bidder."  *Id.* at 189-90.

53.    In *Gartrell*, the Ninth Circuit found, citing *Leslie Miller*, that a federal contract provision requiring contractor to obtain "necessary" licenses and comply with "applicable" state laws was nonetheless preempted by federal law.  940 F.2d at 438-39.  The Ninth Circuit reasoned that preemption precluded enforcement of state laws requiring contractor licenses because enforcement of such state laws would effectively supplant the federal government's "responsibility" determination for its selected federal contractor under 48 C.F.R. § 9.104-1 (requiring prospective contractors to have adequate financial resources, to be able to comply with the

20

performance schedule, to have a satisfactory record of integrity and business ethics). *Id*. at 439-40.

54.    So, too, here.  The comprehensive framework enacted by Congress regarding the detention of aliens for removal leads to the conclusion that the federal government has occupied the field—and that attempts by state governments to regulate such contractors frustrates and conflicts with the federal government's federal interests in the regulation of immigration (and procurement of federal contractors who support those initiatives).  *See Leslie Miller*, 352 U.S. at 187-90; *Gartrell*, 940 F.2d at 438-40; *Arizona v. U.S.*, 567 U.S. 387, 401 (2012); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419-20, n.11 (2003); *see also* Viet D. Dinh, *Reassessing the Law of Preemption*, 88 Geo. L.J. 2085, 2098-99, 2107 (2000). Where Congress occupies an entire field, as it has in the field of alien detention pending removal, even complementary state regulation is impermissible.

55.    Accordingly, the State's attempts to enter the Delaney Hall Facility to conduct inspections are unconstitutional and invalid because they are preempted by Congress' occupation of the entire field of alien detention pending removal.  *See Newsom*, 50 F.4th at 761-763 (2022).

### E.    Federal Preemption—Obstacle

56.    As early as *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824), Chief Justice Marshall stated the governing principle—that "acts of the State Legislatures

… [which] interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution," are invalid under the Supremacy Clause.  *Id.* at 211 (emphasis added).  More than 100 years later Justice Black, after reviewing the precedents, wrote in a similar vein that, while:

> [t]his Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. . . . In the final analysis, . . . [o]ur primary function is to determine whether [a challenged state statute] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  Under the doctrine of conflict preemption, "'state laws are preempted when they conflict with federal law.'"  *California*, 921 F.3d at 878 (quoting *Arizona*, 567 U.S. at 399).  This includes cases where "'compliance with both federal and state regulations is a physical impossibility,' and those instances where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Id.* at 879 (quoting *Arizona*, 567 U.S. at 399); *Murphy v. NCAA*, 584 U.S. 453, 471 (2018).

57.    The State's assertion of authority to override ICE's determination that the Delaney Hall Facility meets ICE's requirements for contract award presents a direct conflict with the objectives of Congress.  Allowing the State to exercise a virtual power of review over ICE's contracting decision through the discriminatory

application of local, State, and administrative codes stands as an impermissible obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

58.    The existence of a single removable claim allows removal of the entire action.  28 U.S.C. § 1441(c); *see Lepucki v. Van Wormer*, 765 F.2d 86, 89 (7th Cir. 1985); *see also National Audubon Society v. Dept. of Water & Power of City of Los Angeles*, 496 F. Supp. 499, 509 (E.D. Cal. 1980).

## VII.    <u>NOTICE OF REMOVAL IS TIMELY</u>

59.    This Notice is timely under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days GEO's notice of the complaint, which has not yet been served.

60.    Notice of this removal has been filed with the state court and provided to all adverse parties by the initial removing defendant pursuant to 28 U.S.C. § 1446(d).

61.    In accordance with the time requirements of Fed. R. Civ. P. 81(c), Defendant will answer or present other defenses or objections after it is served with a copy of the complaint.  Defendant does not waive and, to the contrary, expressly preserves, any and all rights and defenses it may assert by motion or otherwise with respect to the action and the complaint.

WHEREFORE, Defendant The GEO Group, Inc., pursuant to the statutes and authorities identified above hereby removes this action.

Dated: June 23, 2025                    DAVIS WRIGHT TREMAINE LLP

                                        By: */s/ Geoffrey S. Brounell*
                                            Geoffrey S. Brounell

                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY 10020-1104
                                        geoffreybrounell@dwt.com

## **CERTIFICATION**

Pursuant to the obligations set forth in Local Civil Rule 11.2, the undersigned hereby certifies that the matters raised herein are the subject of no other pending lawsuit, arbitration or administrative proceeding other than the following two lawsuits:

- The state court action which is being removed; and

- District of New Jersey federal case captioned as *City of Newark v. GEO Re-Entry Group, LLC, et al.*, Case No. 2:25-cv-02225-JKS-LDW

Dated: June 23, 2025                    DAVIS WRIGHT TREMAINE LLP

By: */s/ Geoffrey S. Brounell*
    Geoffrey S. Brounell

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
geoffreybrounell@dwt.com

*Attorneys for Defendant The GEO Group, Inc.*

25